**2025-2090**

# United States Court of Appeals for the Federal Circuit

**GIORGIO FOODS, INC.,**

*Plaintiff-Appellant*

v.

**UNITED STATES, PROCHAMP B.V.,**

*Defendant-Appellees,*

Appeal from the United States Court of International Trade
in Case No. 1:23-cv-00133, Judge M. Miller Baker.

**NON-CONFIDENTIAL VERSION
RESPONSE BRIEF OF DEFENDANT-APPELLEE
PROCHAMP B.V.**

LIZBETH R. LEVINSON
BRITTNEY R. POWELL
FOX ROTHSCHILD LLP
2020 K STREET, NW
SUITE 500
WASHINGTON, DC 20006
PHONE: (202) 461-3100

*Counsel for Defendant-
Appellee Prochamp B.V.*

January 21, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-2090 |
| **Short Case Caption** | Giorgio Foods, Inc. v. United States |
| **Filing Party/Entity** | Prochamp B.V. Appellee-Defendant |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 01/21 /2026

Signature: /s/ Lizbeth R. Levinson

Name: Lizbeth R. Levinson

| **1. Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Prochamp B.V. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable    ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☑  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable    ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

INTRODUCTION     1

STATEMENT OF RELATED CASES     1

STATEMENT OF THE ISSUE     1

STATEMENT OF THE CASE     2

    I.   DECISIONS THAT ARE THE SUBJECT OF THIS APPEAL     2

    II.  STATEMENT OF FACTS AND COURSE OF PROCEEDINGS BELOW     2

SUMMARY OF THE ARGUMENT     2

ARGUMENT     2

    I.   STANDARD OF REVIEW     2

    II.  COMMERCE'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE     4

       A.   COMMERCE APPLIED THE CORRECT STANDARD IN FINDING THAT PROCHAMP'S SALES TO ALL MARKETS WERE SIMILAR     4

       B.   THE RECORD SUPPORTS COMMERCE'S FINDING OF PROCHAMP'S VOLUME OF REPORTED SALES IN GERMANY     8

       C.   COMMERCE PROPERLY RECONSIDERED ITS SELECTION OF A COMPARISON MARKET CONTRARY TO GIORGIO'S ASSERTIONS OTHERWISE     14

CONCLUSION     15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556, 1562 (Fed. Cir. 1984) ............................................................ 4

*Burlington Truck Lines, Inc. v. United States*,
   317 U.S. 156, 158 (1962) ............................................................................... 3

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (2001) ...................................................................................... 3

*Edison Co. v. NLRB*,
   305 U.S. 197, 229 (1951) ............................................................................... 3

*Fla. Gas Transmission Co. v. FERC*,
   604 F.3d 636, 641 (D.C. Cir. 2010) ............................................................ 13

*Marmen Inc. v. United States*,
   134 F.4th 1334, 1339 (Fed. Cir. 2025) .......................................................... 8

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345, 1352 (Fed. Cir. 2006) ........................................................... 3

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373, 1379 (Fed. Cir. 2003) ......................................................... 11

*OSI Pharms., LLC v. Apotex Inc.*,
   939 F.3d 1375, 1382 (Fed. Cir. 2019) ......................................................... 13

*PAM, S.P.A. v. United States*,
   582 F. 3d 1336, 1339 (Fed. Cir. 2009) .......................................................... 2

*Peer Bearing Co.-Changshan v. United States*,
   766 F.3d 1396, 1399 (Fed. Cir. 2023) ........................................................... 3

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*,
   87 F.4th 1328 (Fed. Cir. 2023) ...................................................................... 3

*Tau-Ken Temir LLP v. United States*,
   147 F.4th 1363, 1371 (Fed. Cir. 2025) .......................................................... 2

*Timken U.S. Corp. v. United States*,
  434 F.3d 1345, 1350 ................................................................ 3

*Viraj Forgings, Ltd. v. United States*,
  350 F. Supp. 2d 1316, 2324 (Ct. Int'l Trade 2004) ................... 6

*Viraj Forgings, Ltd. v. United States*,
  283 F. Supp. 2d 1335, 1344-45 (Ct. Int'l. Trade 2003) ............. 7

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................... 2

19 U.S.C. § 1675d(c)(5)(B) ........................................................ 13

19 U.S.C. § 1677(16) .................................................................... 4

19 U.S.C. § 1677b(a)(1) ............................................................... 4

19 U.S.C. § 1677b(a)(1)(B)(ii) ............................................... 4, 5, 6

19 U.S.C. § 1677b(a)(1) ............................................................... 4

19 U.S.C. § 1677b(a)(1) ............................................................... 4

**Federal Regulations**

19 C.F.R. § 351.404(e) ........................................................ 5, 6, 7, 8

19 C.F.R. § 351.404(e)(1) ............................................................. 5

19 C.F.R. § 351.404(e)(2) ............................................................. 5

19 C.F.R. § 351.404(e)(3) .......................................................... 5, 6

# INTRODUCTION

This brief is submitted on behalf of Defendant-Appellee Prochamp B.V. ("Prochamp") in response to the principal brief filed by Plaintiff-Appellant Giorgio Foods, Inc. ("Giorgio Brief").

# STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, Defendant-Appellee's counsel states that she is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title. Defendant-Appellee's counsel is also unaware of any cases currently pending before this Court or any other court that may directly affect or be affected by the Court's decision in this appeal.

# STATEMENT OF THE ISSUE

Whether the U.S. Department of Commerce's ("Commerce") selection of Germany as the comparison market for purposes of determining normal value for mandatory respondent Prochamp B.V. ("Prochamp") in the underlying antidumping investigation and again in its final redetermination pursuant to remand is supported by substantial evidence.

181353267.1

## STATEMENT OF THE CASE

### I.     Decisions That Are the Subject of This Appeal

Pursuant to Rule 28(b) of the Federal Rules of Appellate Procedure ("FRAP"), Prochamp agrees with and adopts Plaintiff-Appellant Giorgio Foods, Inc.'s summary of the decisions from which its appeal arises.  *Giorgio Brief* at 2-4.

### II.    Statement of Facts and Course of Proceedings Below

Prochamp generally agrees with Giorgio's descriptions of the administrative proceedings before the U.S. Department of Commerce ("Commerce") and of the proceedings before the Court of International Trade. Prochamp disagrees with the basis for Giorgio's appeal.

## SUMMARY OF THE ARGUMENT

## ARGUMENT

### I.     Standard of Review

The Court of Appeals for the Federal Circuit ("Federal Circuit") reviews Court of International ("CIT") decisions *de novo*, applying the same standard of review to Commerce's determination as the CIT does.  *See Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 1371 (Fed. Cir. 2025).  Under 19 U.S.C. § 1516a(b)(1)(B), the statute's express judicial review standard, the CIT and Federal Circuit must review whether the agency's determination was unsupported by substantial evidence or was "otherwise not in accordance with law."  19 U.S.C. §

2

1516a(b)(1)(B)(i).  This Court has stated that it "will uphold Commerce's determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with the law."  *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 87 F.4th 1328 (Fed. Cir. 2023) (*quoting Peer Bearing Co.- Changshan v. United States*, 766 F.3d 1396, 1399 (Fed. Cir. 2023)).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.P.A. v. United States*, 582 F. 3d 1336, 1339 (Fed. Cir. 2009) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951)).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1350 (*quoting Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (2001)).

A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal."  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (Citation and internal quotation marks omitted). For a determination to satisfy this standard "[t]here must be a rational connection between the facts found and the choice made."  *Burlington Truck Lines, Inc. v. United States*, 317 U.S. 156, 158 (1962). Judicial review of agency action must be based on the record as a whole and the

181353267.1

Court sustains Commerce's factual determinations if they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## II.    Commerce's Decision Is Supported By Substantial Evidence

### A. Commerce Applied the Correct Standard in Finding That Prochamp's Sales to All Markets Were Similar.

Giorgio argues that Commerce applied the incorrect standard in finding that Prochamp's sales to all markets appeared to be very similar to sales made in the U.S.  Giorgio notes that 19 U.S.C. § 1677(16) provides a preference for "identical" and not "similar" matches between a respondent's U.S. and comparison market sales.

The statute at 19 U.S.C. § 1677b(a)(1) establishes a clear hierarchy for determining normal value. Commerce must first rely on home-market sales, then—if those sales are unavailable or unsuitable—Commerce may base normal value on sales in a third country pursuant to § 1677b(a)(1)(B)(ii). Only if neither home-market nor third-country sales provide an appropriate basis may Commerce resort to constructed value. This is the sole hierarchy created by the statute, and it concerns methods of determining normal value, not the selection of one third-country market over another.

4

Once Commerce proceeds to the third-country option, neither the statute nor the implementing regulation imposes a hierarchy among potential third-country markets. Section 1677b(a)(1)(B)(ii) is silent as to how Commerce should choose among multiple viable third countries. Instead, Congress left that task to the agency's discretion.

The regulation governing third-country selection, 19 C.F.R. § 351.404(e), likewise contains **no hierarchy**. Rather than prescribing a ranked order of factors or mandating that any single factor predominate, the regulation simply provides that, when normal value is based on prices in a third-country market, Commerce "generally will select the third country based on the following criteria," provided the countries satisfy the threshold conditions in § 1677b(a)(1)(B)(ii). 19 C.F.R. § 351.404(e).

The regulation then identifies several **non-hierarchical** considerations that Commerce *may* take into account:

(1)     the similarity of the foreign like product sold in the third country to the subject merchandise," 19 C.F.R. § 351.404(e)(1);

(2)     the extent to which the volume of sales to a particular third country is larger than sales to other third countries, id. § 351.404(e)(2);

(3)     any other factors that the Secretary considers appropriate, id. § 351.404(e)(3).

181353267.1

Nothing in this language establishes a mandatory order of precedence or a descending hierarchy. To the contrary, the regulation's use of "generally," its reliance on non-exclusive considerations, and its explicit authorization for Commerce to consider "other factors" together reflect the agency's broad discretion to weigh multiple considerations simultaneously.

Because 19 C.F.R. § 351.404(e)(3) expressly authorizes Commerce to consider "other factors that the Secretary considers appropriate," Commerce acts well within its regulatory authority when it evaluates a combination of the similarity and sales-volume factors or accords different weight to different factors depending on the circumstances of the review. The regulation does not require Commerce to apply factor (1) before factor (2), or to privilege either over factor (3). Had Commerce intended to impose a rigid hierarchy, it would have said so; it did not.

Appellant's contention that 19 C.F.R. § 351.404(e) creates a descending hierarchy among the selection factors finds no support in the text of the regulation or its enabling statute. Neither § 1677b(a)(1)(B)(ii) nor § 351.404(e) contains hierarchical language, mandates a particular sequence, or restricts Commerce to a single predominant factor. Appellant's assertion that Commerce must consider the factors listed 19 CFR § 351.404(e) in a "descending hierarchy," citing the CIT in *Viraj Forgings, Ltd. v. United States*, 350 F. Supp. 2d 1316, 2324 (Ct. Int'l Trade

2004), also fails because they ignore the CIT's own language earlier in this case that moved away from that construction of the language. In examining Commerce's Final Determination in this case, the CIT "respectfully disagree[d]" with the *Viraj* construal of 19 CFR § 351.404(e), determining that the regulation only contains a list of "relevant considerations" and "does not imply any ranking." Appx00034 n. 2. The CIT further noted that the regulations' prefatory language "generally will select based on" suggests "a balancing of factors rather than any hierarchy." *Id*. The Court noted that an earlier CIT decision in the *Viraj* litigation stated that the regulation "directs the agency to weight the enumerated benchmarks," *id.*, and that "no single criterion is dispositive." *Id.* (citing *Viraj Forgings, Ltd. v. United States*, 283 F. Supp. 2d 1335, 1344-45 (Ct. Int'l. Trade 2003)). The CIT thus found that Prochamp's case represented a situation where Commerce "might reasonably conclude in certain circumstances that substantially greater sales volume (or some other relevant consideration) may outweigh marginal differences in product similarity." Appx00034 n. 2.

Because the statute establishes a hierarchy only as between methods of determining normal value—and because the regulation governing third-country selection contains no hierarchy at all—the Court should reject Appellant's attempt to impose one. Commerce's decision to weigh multiple regulatory criteria and other appropriate considerations falls squarely within its lawful discretion.

7

Giorgio misstates Commerce's finding and says the agency found that "Prochamp's sales to France have the *most similar product characteristics* to match with U.S. sales." *Giorgio Brief* at 33 (quotations omitted and emphasis added). However, Commerce merely stated that mushrooms sold to France were more similar to mushrooms sold to the U.S. only with regard to net drained weight. Net drained weight is only one of the six product characteristics. Commerce acknowledged that mushrooms sold to France were a closer match with respect to this characteristic but found that all the merchandise was "very similar" to the mushrooms sold to the United States and never stated that mushrooms sold to France were overall identical. Appx03088. Commerce correctly used applied the criteria of similar characteristics set forth in 19 C.F.R. § 351.404(e) because there was no identical "foreign like product." *See Marmen Inc. v. United States*, 134 F.4th 1334, 1339 (Fed. Cir. 2025). Thus, Commerce correctly determined that a slight superiority in product specificity among a group of products that were all "very similar" did not outweigh the fact that Prochamp's sales volume to Germany outweighed its sales volume to France.

### B. The Record Supports Commerce's Finding of Prochamp's Volume of Reported Sales in Germany.

Giorgio argues that the record on remand does not support Prochamp's reported volume of preserved mushrooms in Germany, specifically questioning

181353267.1

sales to [    ] and that none of the evidence directly established that Prochamp's sales to [    ] involved merchandise consumed in Germany.  Giorgio argues that the new evidence placed on the record does not show the actual quantity of Prochamp's preserved mushrooms that were sold or offered for sale in Germany. *Giorgio Brief* at 49.

Giorgio misrepresents the CIT's instructions on remand and the applicable standard.  The CIT did not ask Commerce to determine the actual quantity of sales to the German market but rather to reconsider whether Prochamp sold more mushrooms to the German market and to better support its findings with substantial evidence without assuming that all sales of German-labelled mushrooms were destined for Germany.  Appx00107.

In its remand determination, Commerce fully complied with the CIT's remand instructions, and the CIT found that Commerce supported its finding that the German market volume was largest with "record evidence."  Appx00108. Commerce reopened the record and added additional data and information about (1) the number of retail stores operated by Prochamp's largest customer in Germany and Austria, the other German-speaking country where Prochamp's customer potentially sold mushrooms; (2) population data for both countries; and (3) publicly available figures "regarding mushroom consumption" in those countries."  Appx00075.  Prochamp likewise added new information, consisting of

9

emails between it and two of its customers identifying item numbers exclusively sold in Germany and products that were also sold in other markets, and a website data from a third customer that showed it did not operate in any other country where German is an official language. *Id.* & n. 51. By analyzing this new information, Commerce found the ratio between German and Austrian sales to be roughly 90 percent to 10 percent and found this "reasonably support[ed]" finding that the "Austrian market portion" of the Dutch company's sales was roughly 10 percent of "German-labeled mushrooms" because of the "high levels of consistency between these figures." Appx00076.

The CIT noted that Commerce made "purposefully conservative" estimates of German-market sales, even for transactions that were undoubtedly to German customers. Appx00109. Commerce noted that its conservative approximation likely understated the volume of sales in that country without overstating it for others, while still using its prior "unadjusted and unscrutinized" approximation of French sales. Appx00109. Although Commerce found that there was a smaller volume of German sales during its revised analysis, it reasonably concluded that Germany was the comparable market based on the fact that the revised German market sales numbers still were "significantly larger" than the French market sales numbers and the fact that it had not adjusted French sales despite the equal

10

possibility that the French sales numbers included "consumption of French-labeled merchandise outside of France." Appx00077-80.

Giorgio also claims the smaller volume of Germans sales should mean the sales volume difference between Germany and France should not outweigh the percentage of identical matches between Prochamp's U.S. sales and French sales. *Giorgio Brief* at *51. Commerce specifically addressed this change and found the decrease in percentage and the fact that Germany still had a "significantly larger" market than France did not support a reconsideration of Germany as the comparable market. Appx00077-78. Additionally, Giorgio had the opportunity to submit new information to counteract Prochamp's information but chose not to. Appx00075. Thus, the agency provided a "better explanation" that moves its decision into one with evidence "a reasonable mind might accept as adequate to support" its conclusion. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

Giorgio also dismisses email correspondence provided by Prochamp as "inconclusive," failing to "establish any timeframe for these sales," and "too vague to establish the volume of Prochamp's sales." However, these characterizations ignore the fact that even though the submitted email occurred after the period of investigation, Prochamp's customers still confirmed that their sales in "the past" were to Germany or mainly to Germany, providing sufficient evidence that either

11

all or the majority of certain item codes were resold by [     ] or [               ] in Germany rather than another country.  Commerce explicitly explained that the information regarding non-German consumption only involved the sale of *one* product which reflected only a "small fraction of total volume of German sales reported."  Appx00090.  Even if the Court were to find that this response by Prochamp's client was enough evidence to indicate non-German sales for consumption of that product, the customer's response regarding other transactions must be given the same level of trust.  Appx00091.  Commerce noted the result would be that the customer confirmed that its other constituent transactions, comprising over "98 percent of the German market total sales volumes reported for the purpose of third country selection," were properly attributed to the German market.  Appx00091.  Therefore, substantial evidence supports that a majority of Prochamp's sales with the DE/AT label were destined for the German market.

Giorgio also claims that the record contains no information on the volume of preserved mushroom consumption and Commerce only extrapolated information based on fresh mushroom consumption.  However, the record is ambiguous about whether consumption in Germany and Austria pertains to fresh, preserved, or both types of mushrooms, and even if that information were limited to fresh mushrooms, Commerce reasonably relied on it as a proxy for preserved mushroom consumption.  Appx00110 at n. 4.  Similarly, Giorgio suggested both before the

12

CIT and before this Court that Austrian stores may stock preserved mushrooms in higher quantities compared to German ones, but just as "speculation" cannot support agency action, it likewise cannot form a basis for remand. *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 641 (D.C. Cir. 2010).

Giorgio also claims that Commerce's inability to quantify "downstream distribution and sales information" meant that its determination was "mere speculation." *Giorgio Brief* at *50 (citing *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019)). However, Commerce notes that such information obscures the fact that the information Giorgio references is "not Prochamp's own sales information, *which the record otherwise contains, in full*" but sales information for *unaffiliated* customers. Appx00083-84. Prochamp's own sales information is indeed in the record, contrary to Giorgio's assertions, and reasonably supports the finding that sales were to the German market. Giorgio offered no evidence to the contrary before Commerce. Appx00075. Giorgio similarly claims that Prochamp had more insight into the downstream distribution of preserved mushrooms in the French market than the German market. *Giorgio Brief* at *51. As noted above, such information is not necessary when Prochamp's sales information is contained in the record. Therefore, the record shows that the CIT correctly found that Commerce's decision to keep Germany as the comparison market was supported by substantial evidence.

13

Giorgio further argues that both Commerce and the trial court failed to appropriately account for Commerce's error regarding sales channels and customer types. Commerce has stated that its decision was based on the volume of sales and even though the record "did not support" its initial conclusion about Prochamp's sales channels and customer types in Germany, that this "additional finding" was "not determinative, and merely provided additional corroboration for the selection of Germany." Appx00111, n. 11. Even if the record might show that U.S. and French channels and customer types were more similar, this is still only one factor, and not determinative. Thus, even though Commerce admitted that its findings regarding sales channels and customer types was in error, this was not determinative in its decision to select Germany as the comparison market. There is still sufficient substantial evidence on the record as a whole that supports Commerce's decision. *Atl. Sugar, Ltd.*, 744 F.2d at 1562.

### C. Commerce Properly Reconsidered Its Selection of a Comparison Market Contrary to Giorgio's Assertions Otherwise.

Giorgio lastly makes the bizarre claim that Commerce failed to reconsider its selection of Germany as a comparison market, and therefore its findings of facts are not supported by substantial evidence. *Giorgio Brief* at *53-54. Contrary to Giorgio's assertions, Commerce in fact did reconsider the conclusion on the merits. Appx00045. Giorgio focuses on the exact wording of Commerce's decision that

14

after reopening and reexamining the record it chose to "not revisit[]" its comparable market viability determination with Prochamp, when clearly Commerce did consider whether Germany should be the comparable market both in its Final Determination and the Remand Determination and found no reason to "revisit" or change its earlier choice. *See Giorgio Brief* at *55.

Thus, it is clear that Commerce's decision on remand is supported by substantial evidence.

## <u>CONCLUSION</u>

For these reasons, we respectfully request this Court sustain the trial court's holding affirming Commerce's final decision and enter judgment for the United States.

Respectfully submitted,

*/s/ Lizbeth R. Levinson*
Lizbeth R. Levinson
Brittney R. Powell

181353267.1

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2025-2090

**Short Case Caption:** Giorgio Foods, Inc. v. United States

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains __4__ number of unique words (including numbers) marked confidential.

- [ ] This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

- [x] This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

- [ ] This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 01/21/2026

Signature: /s/ Lizbeth R. Levinson

Name: Lizbeth R. Levinson

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2025-2090

**Short Case Caption:** Giorgio Foods, Inc. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __3,072____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/21/2026

Signature: */s/ Lizbeth R. Levinson*

Name: Lizbeth R. Levinson

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  2025-2090

**Short Case Caption**  Giorgio Foods, Inc. v. United States

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  01/21/2026

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile

☑ Other: via Kiteworks Daniel Bertoni and John Herrmann

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Daniel Bertoni, Esq.<br>United States Department of Justice<br>Commercial Litigation Branch, Civil Div.<br>(served via Kiteworks) | P.O. Box 480 Benn Franklin Station<br>Washington, DC 20044<br>daniel.bertoni@usdoj.gov |
| John M. Herrmann, Esq.<br>Kelley Drye & Warren LLP<br>(Served via Kiteworks) | 3050 K Street, N.W.<br>Suite 400<br>Washington, DC 2007<br>jherrmann@kelleydrye.com |
|  |  |
|  |  |
|  |  |

☐ Additional pages attached.

Date: 01/21/2026

Signature: /s/ Lizbeth R. Levinson

Name: Lizbeth R. Levinson

Save for Filing