2025-2090

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## GIORGIO FOODS, INC.,

*Plaintiff-Appellant,*

v.

## UNITED STATES, PROCHAMP B.V.,

*Defendants-Appellees,*

Appeal from the United States Court of International Trade
in Case No. 1:23-cv-00133, Judge M. Miller Baker.

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## GIORGIO FOODS, INC.

JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400

Counsel to Plaintiff-Appellant

February 11, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-2090 |
| **Short Case Caption** | Giorgio Foods, Inc. v. United States |
| **Filing Party/Entity** | Plaintiff-Appellant Giorgio Foods, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/11/2026

Signature: /s/ John M. Herrmann

Name: John M. Herrmann

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Giorgio Foods, Inc. | N/A | N/A |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

I. COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET IS CONTRARY TO THE STATUTE'S PURPOSE OF IDENTIFYING THE BEST AVAILABLE MATCHES FOR A RESPONDENT'S U.S. SALES ...................................1

    A. The Statute Establishes a Hierarchy For Identifying Comparison Market Sales to Compare With a Respondent's U.S. Sales .........................................................................2

    B. *Viraj II* Establishes That the Purpose Underlying Commerce's Selection of a Comparison Market Is to Identify the Best Matches for a Respondent's U.S. Sales ................................................4

    C. Commerce's Discretion Is Bound by the Statute .................................8

II. THE RECORD, REVIEWED IN LIGHT OF THE STATUTE AND PURPOSE OF SELECTING A COMPARISON MARKET THAT WILL YIELD THE MOST IDENTICAL MATCHES, DOES NOT SUPPORT COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET ...........................................................................9

III. OTHER FACTORS UNDERMINE COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET................................11

IV. THE UNITED STATES FAILS TO REBUT GIORGIO'S ARGUMENTS CONCERNING THE VOLUME OF PROCHAMP'S GERMAN SALES....................................................................................16

V. CONCLUSION AND RELIEF SOUGHT....................................................18

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), this brief contains confidential material that has been omitted. The material omitted on pages 9 and 10 is the mandatory respondent, Prochamp B.V.'s ("Prochamp") confidential sales information as well as numerical data on sales volumes and mix of sales types. This information was redacted by Prochamp in its questionnaire responses in the underlying investigation and the Department of Commerce in its decision memoranda as confidential.

**Page(s)**

**Cases**

*Bohler Bleche GmbH v. United States*,
    324 F. Supp. 3d 1344 (Ct. Int'l Trade 2018) ...............................................3, 4, 13

*Giorgo Foods, Inc. v. United States*,
    Ct. No. 23-00133, Slip Op. 24-79 (Ct. Int'l Trade July 17, 2024)
    (Appx00031-59) ("*Giorgio I*") ....................................................................12, 18

*Giorgo Foods, Inc. v. United States*,
    Ct. No. 23-00133, Slip Op. 25-90 (Ct. Int'l Trade July 16, 2025)
    (Appx00099-112) ("*Giorgio II*") .........................................................................18

*NSK Ltd. v. United States*,
    217 F. Supp. 2d 1291 (Ct. Int'l Trade 2002) ....................................................3, 4

*Oman Fasteners, LLC v. United States*,
    125 F.4th 1068 (Fed. Cir. 2025) ........................................................................ 8-9

*SeAH Steel Vina Corp. v. United States*,
    950 F.3d 833 (Fed. Cir. 2020) .............................................................................16

*SKF USA, Inc. v. United States*,
    537 F.3d 1373 (Fed. Cir. 2008) .........................................................................3, 4

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951).............................................................................................16

*Viraj Forgings, Ltd. v. United States*,
    350 F. Supp. 2d 1316 (Ct. Int'l Trade 2004) ("*Viraj II*")............................*passim*

**Statutes and Regulations**

19 U.S.C. § 1677(16) ..............................................................................................*passim*

19 U.S.C. § 1677(16)(B) ................................................................................................3

19 U.S.C. § 1677(16)(C)................................................................................................3

19 U.S.C. § 1677b(a) .............................................................13

19 C.F.R. § 351.404(e).....................................................*passim*

## Administrative Determinations

*Decision Memorandum for the Final Affirmative Determination in the*
  *Less-Than-Fair-Value Investigation of Certain Preserved*
  *Mushrooms from the Netherlands*
  (Dep't Commerce Mar. 20, 2023) (Appx05393-05469)
  *("Final Decision Memorandum")* ....................................................12

*Final Results of Redetermination Pursuant to Court Remand;*
  *Giorgio Foods, Inc. v. United States,* Ct. No. 23-00133
  (Dep't Commerce Nov. 14, 2024) (Appx00062-00098)
  ("*Remand Redetermination*") ...........................................................18

*Less-Than-Fair Value Investigation of Certain Preserved Mushrooms*
  *from the Netherlands:  Selection of Appropriate Third Country*
  *Market* (Dep't Commerce Aug. 26, 2022) (Appx03084-03090) .................. 9-10

Memorandum from Alice Maldonado to Elizabeth Eastwood re:
  *Antidumping Duty Investigation of Overhead Door*
  *Counterbalance Torsion Springs from India: Selection of an*
  *Appropriate Third Country Market for Alcomex Springs Pvt Ltd.*
  (Dep't Commerce Feb. 28, 2025) (ACCESS barcode: 4722460-01)............... 5-6

Memorandum from Braeden Lowe to Shawn Thompson re:
  *Less-Than-Fair-Value Investigation of High Purity Dissolving*
  *Pulp from Norway -- Selection of Appropriate Third Country*
  *Market* (Dep't Commerce Jan. 28, 2026)
  (ACCESS barcode: 4872503-01) .................................................... 5-6

Memorandum from Thomas Martin to Eric B. Greynolds re:
  *Second Administrative Review of the Antidumping Order on Raw*
  *Honey from Argentina: Selection of Appropriate Third Country*
  *Market* (Dep't Commerce 2, 2024)
  (ACCESS barcode: 4672416-01) .................................................... 5-6

Memorandum from Katie Smith to Mark Hoadley re: *Administrative Review of the Antidumping Duty Order on Utility Scale Wind Towers from Indonesia; 2023-2024 - Selection of an Appropriate Third Country Market* (Dep't Commerce Feb. 5, 2026) (ACCESS barcode: 4877316-01) ....................................................................14

Memorandum from Dusten Hom to Alex Villanueva re: *2024 – 2025 Administrative Review of the Antidumping Duty Order on Certain Stilbenic Optical Brightening Agents from Taiwan: Selection of Third Country Market for Teh Fong Min International Co., Ltd.* (Dep't Commerce Dec. 2, 2025) (ACCESS barcode: 4850627-01) .................14

Memorandum from Christopher Williams to Alex Villanueva re: *Common Alloy Aluminum Sheet from Bahrain: Selection of an Appropriate Third Country Market* (Dep't Commerce Sept. 9, 2025) (ACCESS barcode: 4823242-01) .................14

Memorandum from Allison Hollander to Alex Villanueva re: *Common Alloy Aluminum Sheet from Bahrain – Selection of an Appropriate Third Country Market* (Dep't Commerce June 24, 2020) (ACCESS barcode: 3990601-01) ............................................................. 14-15

Appellant Giorgio Foods, Inc. ("Giorgio") submits this brief in reply to the response briefs submitted by Defendant-Appellees, the United States ("Gov't's Br.") and Prochamp B.V. ("Prochamp's Br."). As demonstrated in Giorgi's opening brief ("Giorgio's Br."), and as further addressed below, the U.S. Department of Commerce ("Commerce") unlawfully selected Germany as the comparison market for purposes of determining normal value in its less-than-fair-value investigation of certain preserved mushrooms from the Netherlands.

## I. COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET IS CONTRARY TO THE STATUTE'S PURPOSE OF IDENTIFYING THE BEST AVAILABLE MATCHES FOR A RESPONDENT'S U.S. SALES

Defendants-Appellees each argue that 19 C.F.R. § 351.404(e) is not hierarchal, and claim that this undermines Giorgio's arguments that Commerce's selection of Germany as the comparison market is unlawful. Gov't's Br. at 29-33; Prochamp's Br. at 4-8. The United States elaborates that Giorgio's reliance on *Viraj Forgings, Ltd. v. United States*, 350 F. Supp. 2d 1316 (Ct. Int'l Trade 2004) ("*Viraj II*") and 19 U.S.C. § 1677(16) is misplaced. Gov't's Br. at 29-33. The United States also argues that Commerce has discretion to select a comparison market and the Courts should defer to the agency's "particular expertise." Gov't's Br. at 20-21, 29.

Defendants-Appellees' views of Giorgio's arguments are too narrow and misconstrue Giorgio's key point. Contrary to Defendants-Appellees' focus on 19

C.F.R. § 351.404(e), Giorgio's discussion of a hierarchy concerns the *statutory* hierarchy imposed on Commerce's selection of a "foreign like product" to match with a respondent's U.S. sales. Giorgio's Br. at 7-8, 34-37. This statutory hierarchy is distinct from the agency's regulations (19 C.F.R. § 351.404(e)), and Commerce's regulations must be read in light of the underlying statutory language and purpose, which also cabin the agency's discretion. Further, *Viraj II* demonstrates that the underlying statutory purpose that should drive Commerce's comparison selection market is to identify *identical* matches with a respondent's U.S. sales. As the United States Court of International Trade ("CIT") explained in *Viraj II*, improperly balancing the factors in 19 C.F.R. § 351.404(e) in a fashion contrary to this purpose can lead to "absurd results."

### A. The Statute Establishes a Hierarchy For Identifying Comparison Market Sales to Compare With a Respondent's U.S. Sales

As explained in Giorgio's opening brief, the *statute* establishes a three-part hierarchy for determining the "foreign like product." Giorgio's Br. at 7 (citing 19 U.S.C. § 1677(16)). The statute makes clear that the "foreign like product" definition is hierarchical, stating that the "foreign like product" means "the first of the following categories," beginning with "subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise." *Id.*, § 1677(16)(A).

Only if such merchandise is not available for analysis does the "foreign like product" mean merchandise produced in the same country by the same person that is not identical to the subject merchandise. *Id.*, § 1677(16)(B)-(C).

The Courts have consistently interpreted the statute in this manner, *i.e.*, as providing a hierarchy for identifying the foreign like product. *See, e.g.*, *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1379-80 (Fed. Cir. 2008) ("Section 1677(16) sets up a hierarchy for identifying 'such or similar merchandise.' Commerce examines each category in order, and once merchandise is presented that meets the criteria stated by a category, the price of this merchandise in the home country becomes the foreign market value.") (quoting *Cemex, S.A. v. United States*, 133 F.3d 897, 902-03 (Fed. Cir. 1998)); *Bohler Bleche GmbH v. United States,* 324 F. Supp. 3d 1344, 1347 (Ct. Int'l Trade 2018) (noting that the statute defines the "'foreign like product,' in order of preference"); *Viraj II*, 350 F. Supp. 2d at 1323 (Ct. Int'l Trade 2004) ("Section 1677(16) . . . suggests a hierarchy for how Commerce should conduct its comparisons for model matching."); *NSK Ltd. v. United States*, 217 F. Supp. 2d 1291, 1299-1300 (Ct. Int'l Trade 2002) ("Section {1677}(16) establishes a descending hierarchy of preferential modes that Commerce must select for matching purposes.").

The United States' claim that "one {} category, listed *equally* with identical merchandise is merchandise that is 'produced in the same country and by the same

person and of the same general class or kind as subject merchandise,'" is confusing, contrary to the statute's plain language, and the Courts' consistent interpretation of 19 U.S.C. § 1677(16). Gov't's Br. at 29-30 (emphasis added). As addressed above, the statute explicitly provides that the foreign like product is "merchandise in the *first* of the following categories" and lists "identical merchandise" first in its own unique category. 19 U.S.C. § 1677(16) (emphasis added). Consistent with the plain language of the statute, the Courts have consistently interpreted the statute as imposing a hierarchy. *See SKF USA, Inc.*, 537 F.3d at 1379-80; *Bohler Bleche GmbH,* 324 F. Supp. 3d at 1347; *Viraj II*, 350 F. Supp. 2d at 1323; *NSK Ltd.*, 217 F. Supp. 2d at 1299-1300. The United States' construction of the statute that treats "identical merchandise" and merchandise "produced in the same country and by the same person and of the same general class or kind as subject merchandise," as "equal" is wrong and is one basis for this Court to remand Commerce's determination.

**B.** **<u>*Viraj II* Establishes That the Purpose Underlying Commerce's Selection of a Comparison Market Is to Identify the Best Matches for a Respondent's U.S. Sales</u>**

The United States and Prochamp also misconstrue *Viraj II* and, specifically, Giorgio's citation of that case. Gov't's Br. at 31-33; Prochamp's Br. at 6-7. Contrary to the United States' and Prochamp's characterization of the CIT's decision in *Viraj II*, the salient point from that case is not whether Commerce's regulations

establish a hierarchy, nor has Giorgio made any such argument. Rather, in *Viraj II*, the Court determined (just as Giorgio has argued) that 19 U.S.C. § 1677(16) "suggests a hierarchy for how Commerce should conduct its comparisons for model matching." *Viraj II*, 350 F. Supp. 2d 1323.

More specifically, in *Viraj II*, the CIT examined Commerce's selection of Germany as the comparison market rather than Canada in an administrative review conducted under the antidumping order on certain stainless steel flanges from India. *Viraj II*, 350 F. Supp. 2d at 1321. The Court held that Commerce's selection of Germany as the comparison market, on the basis that the respondent had a larger volume of sales to Germany than Canada, was unlawful. *Id.*, 350 F. Supp. 2d at 1323-24. Regardless of whether Commerce's comparison market selection regulation (19 C.F.R. § 351.404(e)) establishes a hierarchy of criteria, the *Viraj II* Court correctly recognized that Commerce's selection must be consistent with the statute. *See id.*, 350 F. Supp. 2d at 1323. In other words, the Court in *Viraj II* did not specifically find that the regulatory factors in 19 C.F.R. § 351.404(e) impose a hierarchy based on the regulation alone. Instead, the Court found that because the statute (19 U.S.C. § 1677(16)) contains a hierarchy that establishes a preference for "identical matches," Commerce must weigh the factors under 19 C.F.R. § 351.404(e) in a way that achieves the statute's purpose. *Id.* Indeed, Commerce has espoused this purpose to its regulations in recent comparison selection determinations. *See*

Memorandum from Braeden Lowe to Shawn Thompson re: *Less-Than-Fair-Value Investigation of High Purity Dissolving Pulp from Norway -- Selection of Appropriate Third Country Market*, at 5-6 (Dep't Commerce Jan. 28, 2026) (ACCESS barcode: 4872503-01) ("The purpose of determining product similarity is to identify whether one third country market is more likely to yield better comparisons of price-based {normal values} with the respondent's U.S. sale prices than another third country."); Memorandum from Alice Maldonado to Elizabeth Eastwood re: *Antidumping Duty Investigation of Overhead Door Counterbalance Torsion Springs from India: Selection of an Appropriate Third Country Market for Alcomex Springs Pvt Ltd.*, at 5 (Dep't Commerce Feb. 28, 2025) (ACCESS barcode: 4722460-01) (selecting the Netherlands as the comparison market because a respondent's "sales to the Netherlands are more likely to yield identical or more similar matches to its U.S. sales than will its sales to Poland"); Memorandum from Thomas Martin to Eric B. Greynolds re: *Second Administrative Review of the Antidumping Order on Raw Honey from Argentina: Selection of Appropriate Third Country Market*, at 5 (Dep't Commerce 2, 2024) (ACCESS barcode: 4672416-01) (selecting Germany as the comparison market because "sales to Germany are more likely to yield more matches to its U.S. sales than its sales to Spain or Belgium").

In some instances, a greater volume of sales in a comparison market may achieve more identical matches to a respondent's U.S. sales, even if a comparison

of the product characteristics for sales in that country provides fewer matches with U.S. sales on a percentage basis. In other instances, however, the greater overall volume of sales will not outweigh a higher percentage of identical matches between the U.S. market and a comparison market with a lower total volume of sales. In *Viraj II*, the CIT noted that Commerce's focus on the respondent's greater volume of German sales in that case led "to absurd results" because

> follow{ing} Commerce's reasoning of selecting the appropriate third country based upon the volume of sales without considering the similarity of merchandise sold in both potential comparison markets (as seems to be suggested by Commerce's explanation), then this approach could lead to the comparison of products that are either entirely dissimilar or dissimilar enough that all matches would be based upon constructed value rather than on a price to price basis after adjusting for DIFMER.

*Id.*, 350 F. Supp. 2d at 1324 n.8.

As discussed in Giorgio's opening brief and below in Section II, it was clear at the time Commerce issued its comparison market selection memorandum that, despite the greater volume of German sales, France would offer more identical matches to Prochamp's sales of preserved mushrooms in the United States. This is the exact scenario identified by the Court in *Viraj II*, and the CIT's observation that Commerce's focus on a greater volume of sales (rather than the volume of sales of identical merchandise) led to "absurd results" applies equally to this record.

## C.    Commerce's Discretion Is Bound by the Statute

The United States also claims that the agency has discretion to choose a comparison market. Gov't Br. at 20-21. Further, the United States argues that Commerce's decision that the greater volume of German sales outweighed the higher percentage of French sales that matched Prochamp's U.S. sales "falls squarely within the 'particular expertise' that Commerce brings to 'complex and complicated' antidumping investigations." *Id.* at 29. Contrary to the United States' contention, Commerce's discretion is bound by the statute, and as demonstrated in Giorgio's opening brief, there is nothing "complex" or "complicated" about the matter.

As demonstrated above in Sections I.A-B., the statute provides a clear hierarchy for Commerce's identification of the "foreign like product" with "identical merchandise" – the first factor in the hierarchy. 19 U.S.C. § 1677(16). Further, because the entire purpose underlying Commerce's selection of a comparison market is to identify the "foreign like product" to match with a respondent's U.S. sales, it follows that Commerce's discretion in selecting a comparison market is bound by the statutory purpose. *See Viraj II*, 350 F. Supp. 2d at 1323 (the "authority to interpret and determine markets and products most appropriate for comparison does not, however, permit Commerce to disregard general and accepted principles of statutory construction"). Furthermore, Commerce's "{d}iscretion is abused if, for

example, its exercise rests on a 'clear error of judgment' in the 'consideration of the relevant factors.'" *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025) (quoting W*eyerhaeuser Co. v. United States Fish & Wildlife Service*, 586 U.S. 9, 25, 139 S. Ct. 361, 202 L. Ed. 2d 269 (2018)). Here, Commerce clearly erred in its judgment that a greater volume of German sales would yield more "identical" matches between the German comparison market and Prochamp's U.S. sales. Giorgio's Br. at 33-34, Attachment 1.

## II. THE RECORD, REVIEWED IN LIGHT OF THE STATUTE AND PURPOSE OF SELECTING A COMPARISON MARKET THAT WILL YIELD THE MOST IDENTICAL MATCHES, DOES NOT SUPPORT COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET

The United States argues that Attachment 1 of Giorgio's opening brief contains Giorgio's "own preferred dumping margin calculation" and "provides {Giorgio's} own chosen analysis of what a antidumping order should accomplish." Gov't Br. at 30. Further, the United States asserts this Court should disregard Attachment 1 because "Giorgio never provided its analysis to Commerce to allow the agency to apply its expertise and, if necessary, further develop the record" and because it is "outside the administrative record." *Id.* at 30-31.

As discussed in detail in Giorgio's opening brief, at the time Commerce selected Germany as the comparison market, the record established that a maximum of **[ # ]** percent of Prochamp's German sales representing approximately

[sales volume] kilograms could be identically matched with Prochamp's U.S. sales. Giorgio's Br. at 34; Appx03087. In contrast, more than [ # ] percent of Prochamp's French sales could have been matched identically with Prochamp's U.S. sales, accounting for more than [sales volume] kilograms of Prochamp's sales of preserved mushrooms in France. *Id.*; Appx03087.

The United States acknowledges these figures but claims the difference is an "insignificant amount in the grand scheme of the statutory and regulatory scheme" because it "considers only one of six product comparison characteristics." Gov't's Br. at 27. In fact, however, the analysis incorporates both the total volume of Prochamp's German and French sales, as well as all six product characteristics – the two primary considerations identified in 19 C.F.R. § 351.404(e). Importantly, none of this analysis depends on Attachment 1 of Giorgio's opening brief, which is merely illustrative of the impact of Commerce's failed comparison market selection on Commerce's own dumping calculation (not Giorgio's preferred dumping calculation).

This Court, however, should reject the United States' request to disregard Attachment 1 of Giorgio's opening brief. The United States contradicts its own argument that Attachment 1 is "outside the administrative record" when it admits that the data in Attachment 1 are "from Commerce's calculation memorandum." Gov't's Br. at 30-31. Giorgio did not "choose" any dumping calculation, rather

Attachment 1 is a summary of Commerce's dumping calculation demonstrating the agency had limited identical comparisons upon which to rely, a reflection of Commerce's flawed comparison market selection.

Further, Giorgio included Attachment 1 in its memorandum of law in support of its motion for judgment on the agency record to CIT, and the CIT did not reject or disregard it. *See* Pl. Giorgio's Mem. of Law in Supp. Pl.'s Mot. for J. Upon the Agency R. (Nov. 22, 2023) filed in *Giorgio Foods, Inc. v. United States*, CIT Ct. No. 23-00133 (ECF Nos. 24-25) at Attachment 1. The analysis in the attachment is consistent with Giorgio's arguments in its administrative case brief demonstrating a lack of matches between Prochamp's German and U.S. sales. Appx05344-05345. Thus, Commerce fully considered Giorgio's argument during the underlying administrative proceedings, and this Court should not disregard Attachment 1. As noted above, however, even if Attachment 1 is disregarded, Giorgio demonstrated a lack of matches throughout its brief, and this Court can consider the entirety of Giorgio's arguments without relying on Attachment 1.

## III.   OTHER FACTORS UNDERMINE COMMERCE'S SELECTION OF GERMANY AS THE COMPARISON MARKET

As Giorgio demonstrated in its opening brief, at the time Commerce selected Germany as the comparison market and at the time of Commerce's final determination, the record demonstrated that Prochamp sold preserved mushrooms to

Germany in a unique manner that distinguished those sales from Prochamp's U.S. sales and other potential comparison markets. Giorgio's Br. at 41-46. In its final determination, Commerce acknowledged that it initially incorrectly determined Prochamp's German and U.S. sales channels and customer types were similar, but claimed these facts were "not determinative" and, therefore, did not undermine Commerce's ultimate selection of Germany. *Id.*, at 44; Appx05468. The CIT found that Commerce's error regarding sales channels was harmless. *Id.*, at 45; Appx00048 at n.13. Contrary to the CIT's harmless error determination, however, Commerce's error was multiple in that it also failed to consider evidence establishing that Prochamp's French and U.S. sales channels and customer types were more similar than its German sales channels and customer types, providing additional evidence that France (not Germany) was the appropriate comparison market. Giorgio's Br. at 45-46.

In its response brief, the United States echoes the CIT, claiming that Commerce's initial findings regarding sales channels and customer types "were only used to corroborate Commerce's conclusion." Gov't Br. at 33-34. The United States takes its argument one step further, however, in asserting that Commerce "did not need to reanalyze whether the further information about United States sales supported an alternative finding because the regulatory criteria {under 19 C.F.R. § 351.404(e)} were still met." Gov't Br. at 35. The United States also repudiates

sales channel and customer type as considerations in selecting a comparison market, claiming "Commerce's task is to conduct the third-country market selection process and focus on *product* similarity and sales volume, not sales channel and customer similarity." *Id.* The United States' claim is internally inconsistent with its own brief and contrary to agency practice.

In addition to instructing Commerce to seek out "identical" matches between a respondent's comparison market sales and U.S. sales (19 U.S.C. § 1677(16)), the statute also instructs Commerce to make a "fair comparison" between such sales in determining a respondent's dumping margin. 19 U.S.C. § 1677b(a); *Bohler Bleche GmbH & Co.,* 324 F. Supp. 3d at 1350; *Viraj II,* 350 F. Supp. 2d at 1326-27 ("Commerce must determine the appropriate 'foreign like product,' in accordance with 19 U.S.C. § 1677(16)(B), and must 'make a fair comparison between the United States price charged for the subject merchandise . . . and the price charged for the corresponding 'foreign like product.'"). As the United States acknowledges in its brief, 19 C.F.R. § 351.404(e) provides that:

> Commerce generally will choose a third country based on the following criteria:
>
> (1) The foreign like product exported to a particular third country is more similar to the subject merchandise exported to the United States than is the foreign like product exported to other third countries;

(2) The volume of sales to a particular third country is larger than the volume of sales to other third countries;

(3) Such other factors as the Secretary considers appropriate.

Gov't's Br. at 2-3 (quoting 19 C.F.R. § 351.404(e)).

The "other factors" Commerce most commonly considers are sales channels and customer types. *See*, *e.g.*, Memorandum from Katie Smith to Mark Hoadley re: *Administrative Review of the Antidumping Duty Order on Utility Scale Wind Towers from Indonesia; 2023-2024 - Selection of an Appropriate Third Country Market*, at 4-5 (Dep't Commerce Feb. 5, 2026) (ACCESS barcode: 4877316-01) (analyzing sales channels and customer types as the "other factors" under 19 C.F.R. § 351.404(e)); Memorandum from Dusten Hom to Alex Villanueva re: *2024 – 2025 Administrative Review of the Antidumping Duty Order on Certain Stilbenic Optical Brightening Agents from Taiwan: Selection of Third Country Market for Teh Fong Min International Co., Ltd.*, at 4 (Dep't Commerce Dec. 2, 2025) (ACCESS barcode: 4850627-01) (considering whether a respondent sells through an affiliate to be a relevant "other factor" under 19 C.F.R. § 351.404(e)); Memorandum from Christopher Williams to Alex Villanueva re: *Common Alloy Aluminum Sheet from Bahrain: Selection of an Appropriate Third Country Market*, at 4 (Dep't Commerce Sept. 9, 2025) (ACCESS barcode: 4823242-01) (considering a respondent's sales channels as an "other factor" under 19 C.F.R. § 351.404(e)); Memorandum from

Allison Hollander to Alex Villanueva re: *Common Alloy Aluminum Sheet from Bahrain – Selection of an Appropriate Third Country Market*, at 4 (Dep't Commerce June 24, 2020) (ACCESS barcode: 3990601-01).

Further, Commerce's practice "is to consider all of the criteria" under 19 C.F.R. § 351.404(e) "when determining the appropriateness of a third-country comparison market," and only if "all other factors are equal" will Commerce "select the largest third-country market by volume." Memorandum from Allison Hollander to Alex Villanueva re: *Common Alloy Aluminum Sheet from Bahrain – Selection of an Appropriate Third Country Market,* at 3 (Dep't Commerce June 24, 2020) (ACCESS barcode: 3990601-01); Memorandum to Abdelali Elouaradia re: *Less-Than-Fair-Value Investigation of Raw Honey from Argentina: Selection of Appropriate Third Country Market,* at 6 (Dep't Commerce Aug. 11, 2021) (ACCESS barcode: 4151668-01); Memorandum to Melissa G. Skinner re: *2018-2019 Administrative Review of the Antidumping Duty Order on Welded Line Pipe from the Republic of Turkey; Selection of an Appropriate Third Country Market,* 3 (Dep't Commerce Apr. 16, 2020) (ACCESS barcode: 3966047-01); Memorandum to Jill E. Pollack re: *Certain Frozen Warmwater Shrimp from India; Selection of an Appropriate Third Country Market*, 3 (Dep't Commerce Nov. 30, 2020) (ACCESS barcode: 4059889-01).

The United States' contentions that evidence concerning sales channels and customer types can only serve to corroborate its comparison market selection, and cannot serve as evidence detracting from its selection, are contrary to the standard of review. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); *SeAH Steel Vina Corp. v. United States*, 950 F.3d 833, 840 (Fed. Cir. 2020) ("We look to 'the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.'") (quoting *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (internal citation omitted). If Commerce considers evidence of a factor supporting its determination, it must also consider detracting evidence. This Court should reject the United States' attempts to minimize detracting evidence by eliminating a factor the agency considered relevant in this antidumping investigation and many others.

## IV.  THE UNITED STATES FAILS TO REBUT GIORGIO'S ARGUMENTS CONCERNING THE VOLUME OF PROCHAMP'S GERMAN SALES

In its opening brief, Giorgio argued that Commerce's identification of the German sales volume is not supported by substantial evidence. Giorgio's Br. at 46-52. The United States responded that Giorgio's argument "stems from unsupported speculation rather than reasonable inferences from the record information" and

contends that Giorgio's arguments amount to a request that this Court reweigh the evidence before Commerce. Gov't's Br. at 38, 42. Contrary to these claims, as the United States is forced to acknowledge, the volume of Prochamp's sales it has attributed to Germany is an estimate because neither Prochamp nor the Commerce Department could conclusively determine the volume.

The United States claims that "Giorgio continues to maintain that requiring an *unaffiliated customer's* downstream distribution and sales information is not an unrealistic standard." Gov't's Br. at 38 (emphasis in original). The United States' rebuttal, however, misses the larger point. The fact that Commerce and Prochamp went to great lengths to come up with an *estimate* of the volume of Prochamp's German sales undermines Commerce's selection of Germany as the comparison market. As discussed in Giorgio's opening brief, Prochamp's German sales were largely made under Free Carrier ("FCA") incoterms, which prevented Prochamp from determining the sale volume. Giorgio's Br. at 10; Appx00318. This is not the case for Prochamp's sales to France or other third country comparison markets. *Id.*; Appx00318. Commerce should have considered this in selecting a comparison market but failed to do so, making its selection of Germany as the comparison market unsupported by substantial evidence.

## V.  CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above and in Giorgio's opening brief, Giorgio respectfully urges this Court to determine that the Commerce's final determination, the CIT's opinion and order in *Giorgio I*, Commerce's *Remand Redetermination*, and the CIT's opinion and order in *Giorgio II* are not supported by substantial evidence and are not otherwise in accordance with law.  Giorgio, therefore, urges this Court to remand Commerce's final determination and the *Remand Redetermination* to the agency with instructions to reconsider its determination as set forth above, and to instruct Commerce to collect data on Prochamp's sales of certain preserved mushrooms in France during the relevant period of investigation.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Giorgio Foods, Inc.

Dated: February 11, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-2090

**Short Case Caption:** Giorgio Foods, Inc. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,983  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/11/2026

Signature: /s/ John M. Herrmann

Name: John M. Herrman